**United States District Court**
For the Northern District of California

1

2

3

4

5          UNITED STATES DISTRICT COURT

6          NORTHERN DISTRICT OF CALIFORNIA

7

8   MARLENE HERRERA, *et al.*,          No. C-12-4032 EMC

9        Plaintiffs,           **RELATED TO**

10     v.                 No. C-12-1079 EMC

11   COMMAND SECURITY CORP.,

12        Defendant.         **ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE**

13  _____/     **(Docket No. 25 in C-12-4032)**

14   CALIFORNIA SERVICE EMPLOYEES
       HEALTH & WELFARE TRUST FUND, *et*

15   *al.*,

16        Plaintiffs,

17     v.

18   COMMAND SECURITY CORPORATION,

19        Defendant.

20  _____/

21

22      In Case No. C-12-4032 EMC, *Herrera v. Command Security Corp.*, Plaintiffs consist of a

23  union (Service Employees International Union, United Service Workers West) and three individuals,

24  who are members of the union as well employees of Defendant Command Security Corp., doing

25  business as Aviation Safeguards (hereinafter "Aviation").  Plaintiffs have sued Aviation for

26  violations of the Railway Labor Act ("RLA").  Currently pending before the Court is Aviation's

27  motion to transfer venue from this District to the Central District of California.  Having considered

28  the parties' briefs and accompanying submissions, as well as the oral argument of counsel and the

**United States District Court**

For the Northern District of California

response to the order to show cause filed in the related case, *California Service Employees Health & Welfare Trust Fund v. Command Security Corp.*, No. C-12-1079 EMC, the Court hereby **GRANTS** Aviation's motion.

## I.   FACTUAL & PROCEDURAL BACKGROUND

A.   Related ERISA Action

Before taking into consideration the allegations raised in the instant case, the Court first takes note that the instant case is related to an earlier-filed case over which this Court also presides, *California Service Employees Health & Welfare Trust Fund v. Command Security Corp.*, No. C-12-1079 EMC.  The earlier-filed case is an ERISA case, in which an employee trust fund and its trustees charge Aviation with failing to pay, *inter alia*, contributions owed to the trust fund, including but not limited to the period starting in December 2011.  *See California Serv. Employees*, No. C-12-1079 EMC (Docket No. 1) (Compl. ¶ 20).  The plaintiffs in the ERISA case initiated that action in March 2012.

Subsequently, Aviation moved to transfer the ERISA case to the Central District of California.  This Court denied the motion in July 2012.  *See California Serv. Employees*, No. C-12-1079 EMC (Docket No. 38).  In the order, the Court took into account Aviation's contention that there were multiple witnesses in the Central District who would provide testimony to support its position that, as of December 2011 (or thereabouts), it no longer had an obligation to pay contributions because, at or about that time, a majority of its employees (who work at the LAX airport) stated via petition that they no longer wanted to be represented by the union.[1]  The Court,

---

[1] Additional details about the petition are provided in the Conlon declaration, offered by Aviation in support of its motion to transfer.  In his declaration, Joe Conlon, a regional vice president for Aviation, states that, "[i]n the fall of 2011, [Aviation] received petitions signed by a majority of our [452] LAX employees stating that they no longer wished to be represented by the plaintiff union."  Conlon Decl. ¶ 7.  Each employee who signed provided a separate petition, which stated as follows:

**PETITION TO REMOVE UNION AS REPRESENTATIVE**

The undersigned employees of Aviation Safeguards do not want to be represented by [the Union].

Should the undersigned employees constitute 50% or more of the bargaining unit represented by the union, the undersigned employees

**United States District Court**
For the Northern District of California

however, gave little weight to that argument, largely because there was an "*ongoing* dispute[] as to the [collective bargaining agreement's] validity," *i.e.*, whether the union had actually been decertified, in which case Aviation's "obligation to the Trust Fund[] continue unabated until the issue is adjudicated." *California Serv. Employees*, No. C-12-1079 EMC (Docket No. 38) (Order at 10) (emphasis added). Thus, the decertification issue was not yet at issue in the ERISA case. The Court added that the ERISA case "would not be likely to require multiple witnesses outside this District" but rather "would likely involve judicially noticeable documents demonstrating that the union became decertified – and hence the CBA no longer operable – as of a certain date." *California Serv. Employees*, No. C-12-1079 EMC (Docket No. 38) (Order at 11-12).

B.      Current Action

        A few weeks after the Court denied the motion to transfer in the ERISA case, Plaintiffs filed the instant action. Approximately a month later, Plaintiffs moved to have their case related to the ERISA case. *See California Serv. Employees*, No. C-12-1079 EMC (Docket No. 44) (motion). Although Aviation opposed the motion to relate, highlighting that it would be moving to transfer the action to the Central District (as it had with the ERISA case), the Court granted the motion. *See California Serv. Employees*, No. C-12-1079 EMC (Docket No. 46) (order). Several weeks later, Aviation filed the currently pending motion.

C.      Allegations in Current Action

        In the operative complaint in the instant action, Plaintiffs allege as follows.

        In or about October 2008, the Union and Aviation entered into a collective bargaining agreement ("CBA"). Under the CBA, Aviation recognized the Union as the exclusive representative for Aviation's non-supervisory, non-clerical employees at, *inter alia*, the LAX airport. *See* FAC ¶¶ 14-16. The term of the CBA was subsequently negotiated to extend through November 30, 2012. *See* FAC ¶ 23.

        hereby request that our employer immediately withdraw recognition from the union, as it does not enjoy the support of a majority of employees in the bargaining unit.

Conlon Decl. ¶ 9 (internal quotation marks omitted).

**United States District Court**
For the Northern District of California

1   In 2011, Aviation began to "circulat[e] pieces of paper to its employees entitled 'Petition to

2   Remove Union as Representative.'"  FAC ¶ 38 & Ex. 2; *see also* note 1, *supra*.  Aviation

3   encouraged its employees to sign the petition.  *See* FAC ¶ 41.

4       Subsequently, in December 2011, Aviation sent a letter to the Union, stating that

5       [o]ur Company has tried to work with [the] union concerning matters
        of concern to our employees in your LAX bargaining unit, but we

6       have not received any cooperation from [the] union in this regard.  Our
        employees are extremely unhappy with [the] union's lack of

7       cooperation.  I am informing [the] union by this communication that
        the Company has received a decertification petition signed by a

8       majority of our employees in your LAX bargaining unit.  Pursuant to
        that petition a majority of those bargaining unit employees no longer

9       want to be represented by your union.

10          In accordance with that petition and our understanding that
        [the] union has not been and is not certified under the Railway Labor

11      Act to represent any of our LAX employees, the Company is hereby
        withdrawing recognition from [the] union effective immediately, and

12      as [of] December 30, 2011 at 12:01 AM the Company no longer
        recognizes the validity of your union's collective bargaining

13      agreement for any purpose

14  FAC, Ex. 3.  According to Plaintiffs, Aviation "coerced certain of its employees to oppose [the

15  Union]."  FAC ¶ 49.

16      In or after February 2012, Aviation established terms for its LAX employees different from

17  those contained in the CBA – *e.g.*, terms regarding wages, medical benefits, work rules, and so forth.

18  *See* FAC ¶¶ 55-58; *see also* FAC ¶¶ 69-72.

19      Based on, *inter alia*, the above allegations, Plaintiffs have filed multiple claims against

20  Aviation based on violations of the RLA – *e.g.*, changing employment terms without following

21  certain procedures mandated by the RLA, failing to make every reasonable effort to make and

22  maintain agreements, interfering with employees' right to designate representatives of their own

23  choosing, and refusing to participate in mediation with the National Mediation Board ("NMB").

24  Plaintiffs have also brought one claim based on a violation of state law (the California Labor Code).

25                              **II.   DISCUSSION**

26  A.    Legal Standard

27      Title 28 U.S.C. § 1404(a) provides as follows: "For the convenience of parties and witnesses,

28  in the interest of justice, a district court may transfer any civil action to any other district or division

4

**United States District Court**
For the Northern District of California

1  where it might have been brought or to any district or division to which all parties have consented."

2  28 U.S.C. § 1404(a).

3       Consistent with the language of § 1404(a), the Ninth Circuit has held that a district court has

4  discretion in deciding whether to transfer.  *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th

5  Cir. 2007) (stating that a "district court's decision to change venue is reviewed for abuse of

6  discretion"; adding that "'[w]eighing of the factors for and against transfer involves subtle

7  considerations and is best left to the discretion of the trial judge'"). The Ninth Circuit has also noted

8  that, in making the decision on whether to transfer, a court may consider factors such as:

9       (1) the location where the relevant agreements were negotiated and
executed, (2) the state that is most familiar with the governing law, (3)
10  the plaintiff's choice of forum, (4) the respective parties' contacts with
the forum, (5) the contacts relating to the plaintiff's cause of action in
11  the chosen forum, (6) the differences in the costs of litigation in the
two forums, (7) the availability of compulsory process to compel
12  attendance of unwilling non-party witnesses, and (8) the ease of access
to sources of proof.  Additionally, the presence of a forum selection
13  clause is a "significant factor" . . . .

14  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *see also Decker Coal Co. v.*

15  *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (discussing private and public factors

16  affecting the convenience of a forum).

17       Consistent with the above, courts in this District have commonly articulated the relevant

18  factors as follows:

19       (1) plaintiffs' choice of forum, (2) convenience of the parties, (3)
convenience of the witnesses, (4) ease of access to the evidence, (5)
20  familiarity of each forum with the applicable law, (6) feasibility of
consolidation with other claims, (7) any local interest in the
21  controversy, and (8) the relative court congestion and time of trial in
each forum.

22

23  *Vu v. Ortho-Mcneil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009) (Illston, J.).

24       The party moving for transfer has the burden in showing that transfer is appropriate.  *See*

25  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *Winningham v.*

26  *Biomet Orthopedics, LLC*, No. C 12-00503 JSW, 2012 U.S. Dist. LEXIS 129542, at *3-4 (N.D. Cal.

27  Aug. 31, 2012).  The Ninth Circuit has expressly stated that "[t]he defendant must make a strong

28

**United States District Court**
For the Northern District of California

1    showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v.*

2    *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

3    Here, there is no dispute that either instant case (or for that matter the ERISA case) could

4    have been brought in the potential transferee district, *i.e.*, the Central District of California.

5    B.    <u>Neutral or Marginal Factors</u>

6    As with the ERISA case, in the instant case, many of the relevant factors are neutral or only

7    marginally weigh in favor of one side – *e.g.*, convenience of the parties; ease of access to the

8    evidence; familiarity of each forum with the applicable law; and the relative court congestion and

9    time of trial in each forum.  Thus, the critical factors in the instant case are:

10   •    Plaintiffs' choice of forum;

11   •    convenience of the witnesses and the availability of compulsory process to compel

12        attendance of unwilling non-party witnesses;

13   •    any local interest in the controversy, the respective parties' contacts with the forum, and the

14        contacts relating to Plaintiffs' causes of action in the chosen forum; and

15   •    feasibility of consolidation with other claims.

16   C.    <u>Plaintiffs' Choice of Forum</u>

17   As noted above, there is a general presumption in favor of a plaintiff's choice of forum.  *See*

18   *Decker*, 805 F.2d at 843 (stating that "[t]he defendant must make a strong showing of inconvenience

19   to warrant upsetting the plaintiff's choice of forum").  Moreover, "a plaintiff's choice of forum is

20   entitled to greater deference when the plaintiff has chosen the home forum."  *Piper Aircraft Co. v.*

21   *Reyno*, 454 U.S. 235, 255 (1981).

22   In the instant case, the Northern District of California is not the home forum of any of the

23   individual plaintiffs.  However, the Union is also a plaintiff in its own right.  *See* FAC ¶ 10 (alleging

24   that the Union has brought the suit on behalf of its members *and* "on behalf of itself to challenge

25   [Aviation's] unilateral refusal to abide by negotiated rates of pay, rules, and working conditions

26   prevailing at the time of that refusal").  The Union appears to have two home fora, not just one – *i.e.*,

27   one in the Northern District and one in the Central District.  *See* FAC ¶ 9 (alleging that the Union

28   has two headquarters, one in Oakland and one in Los Angeles).  Because at least one of Plaintiffs'

1   home fora is in the Northern District, Plaintiffs' decision to sue in the Northern District should be

2   afforded some deference.  *Cf. Baker v. RBS Worldpay, Inc.*, No. 10-0307-WS-B, 2010 U.S. Dist.

3   LEXIS 110145, at *12-13 n.7 (S.D. Ala. Oct. 15, 2010) (rejecting defendants' suggestion that,

4   where there are multiple plaintiffs who live in different states, there cannot be deference where some

5   of the plaintiffs reside outside of the forum; "[d]efendants' logic is unpersuasive" because then "a

6   defendant could always use § 1404(a) to override plaintiffs' choice of forum if their citizenship is

7   not unanimous").  However, it is noteworthy that the Central District constitutes a home forum for

8   *all* plaintiffs, whereas the Northern District only constitutes one of two home fora for a single

9   plaintiff.

10          The Court further notes that Plaintiffs' choice of forum does *not* get the heightened deference

11   that the Court afforded in the related ERISA case.  *See California Serv. Employees*, No. C-12-1079

12   EMC (Docket No. 38) (Order at 6) (agreeing with the plaintiffs that, "in this Circuit, 'a plaintiff's

13   choice of forum is accorded great deference in ERISA cases'").  The pending case is a RLA case

14   and has nothing to do with ERISA.

15          The Court therefore finds that this factor weighs only marginally in favor of Plaintiffs.

16   D.   <u>Convenience of Witnesses</u>

17          In considering this factor, a court must take into account "not only the number of witnesses

18   each side has, but also 'the importance of the witnesses.'"  *Hong v. Morgan Stanley & Co., LLC*, No.

19   C12-01756 TEH, 2012 U.S. Dist. LEXIS 150382, at *10 (N.D. Cal. Oct. 18, 2012).

20          In its papers, Aviation points to multiple individuals who it claims will be central witnesses

21   in the case, all of whom live in the Central District – *e.g.*, the persons who negotiated the CBA (both

22   on Aviation's side and on the Union's side) and the employees who signed the petitions stating that

23   they did not want the Union to be their representative (*i.e.*, a majority out of the 452 employees).

24   *See* Conlon Decl. ¶¶ 8-9.

25          As a preliminary matter, the Court notes that, to the extent the persons who negotiated on

26   behalf of the Union are all still employed by the Union, then any purported inconvenience to them is

27   given minimal weight.  After all, the Union made the decision to sue in the Northern District.

28

United States District Court

For the Northern District of California

With respect to inconvenience to Aviation employees who negotiated the CBA or who signed the petitions, it is possible that some of those employees no longer work for Aviation. Inconvenience to party witnesses (such as current employees) is not as important as inconvenience to nonparty witnesses (such as former employees), largely because party witnesses are subject to compulsory process. *See Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009) (stating that "the convenience of non-party witnesses is a more important factor than the convenience of party witnesses"); *Allstar Mktg. Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009) ("accord[ing] less weight to the inconvenience of *party* witnesses, however, as they can be compelled to testify regardless of the forum in which the lawsuit is ultimately litigated") (emphasis in original).  However, there is nothing in the record to reflect how many former employees there are.  The Court therefore must proceed with the assumption that the Aviation employees who participated in the negotiation or who signed the petitions continue, for the most part, to work for Aviation.

Nonetheless, a party witness subject to compulsory process may suffer inconvenience; a witness, whether a party or not, has to travel outside his or her home forum to participate in litigation in another forum.  As Judge Alsup of this District has noted, "[e]ven where a witness is an employee of a party and will be paid, . . . disruption [to the witness's life] is still a hard fact." *In re Funeral Consumers Antitrust Litig.*, Nos. C 05-01804 WHA, C 05-02501 WHA, C 05-02502 WHA, C 05-02792 WHA, C 05-03124 WHA, C 05-03305 WHA, C 05-02806 WHA, 2005 WL 2334362, at *5 (N.D. Cal. Sept. 23, 2005) (noting that,); *see also Hong*, 2012 U.S. Dist. LEXIS 150382, at *10 (granting motion to transfer based in large part on the fact that "the vast majority of the actions and events took place" outside the forum and the "central witnesses" were located outside the forum, at least some of whom were still employed by the defendant).  The Court, therefore, does give some weight to Aviation's assertion that there will be inconvenience to Aviation employee witnesses because those witnesses largely reside in the Central District.

In their papers, Plaintiffs protest that any inconvenience to these witnesses should be discounted because witness testimony will not in fact be critical to resolution of the case.  *See* Opp'n at 12 (arguing that "[t]his case, like the [ERISA case], should be decided primarily on the law and

8

1   on undisputed facts").  Plaintiffs point out that this Court, in the related ERISA case, indicated that

2   witness testimony would not be critical to Aviation's defense that the Union had been lawfully

3   decertified.  The Court stated: "[Aviation's] defense would not be likely to require multiple

4   witnesses from outside this District.  Rather, it would likely involve judicially noticeable documents

5   demonstrating that the [U]nion became decertified – and hence the CBA no longer operable – as of a

6   certain date." *California Serv. Employees*, No. C-12-1079 EMC (Docket No. 38) (Order at 11-12).

7   But that statement does not hold true in this case where additional allegations have been made by

8   both parties.

9          For example, it is far from clear that this case (in contrast to the ERISA action) can be

10  resolved based on judicially noticeable documents given:

11  •       Plaintiffs' allegation that Aviation orchestrated the petition signing.  *See, e.g.*, FAC ¶ 38

12          (alleging that, "[i]n 2011, Aviation Safeguards began circulating pieces of paper to its

13          employees entitled 'Petition to Remove Union as Representative'").

14  •       Plaintiffs' allegation that Aviation "coerced certain of its employees to oppose [the Union]."

15          FAC ¶ 49.

16  •       Aviation's allegation that the Union fraudulently induced it to enter into the CBA in 2008,

17          *e.g.*, by presenting employee signatures to Aviation suggesting that a majority of the

18          employees supported the Union when in fact those signatures were not authorized or

19          genuine.  *See, e.g.*, Ans. ¶ 14.

20         The Court acknowledges that Plaintiffs have argued – in conjunction with a pending motion

21  for judgment on the pleadings – that, as a legal matter, the decertification petitions and alleged

22  fraudulent inducement are irrelevant.  *See, e.g.*, Docket No. 29 (Mot. at 16-17) (arguing that,

23  Aviation "had no legal right to withdraw recognition from or terminate its CBA with [the Union]

24  based solely on a 'petition' it purports to have received from its employees"; also arguing that

25  estoppel and waiver bar Aviation from claiming fraudulent inducement).  However, if those legal

26  arguments are rejected, then the allegations concerning the decertification petitions and alleged

27  fraudulent inducement will need to be adjudicated; witness testimony herein would in fact be

28  critical.

**United States District Court**
For the Northern District of California

1    The Court is not in a position to say, at this juncture in the proceedings, that witness

2  testimony on the decertification petitions and alleged fraudulent inducement is immaterial.  To the

3  extent Plaintiffs suggest that this Court address their legal arguments first, and then make a decision

4  to transfer only if it rejects their legal arguments, that proposal would not serve judicial economy.  It

5  would essentially bifurcate the case on the merits before two different courts.  It makes more sense

6  to preserve greater judicial economy to have one court decide all the issues and render a verdict.

7  Only the Central District can assuredly do this.

8    The Court thus finds that this factor weighs strongly in favor of Aviation's motion to

9  transfer.

10  E.    Local Interest in the Controversy and Contacts with the Forum

11    The Northern District has a local interest in the controversy to the extent that the Union has

12  one of its headquarters in Oakland and has members who reside throughout the Northern District.

13  *See* Sharwood Decl. ¶¶ 2-5.  But this factor, in the end, clearly weighs in favor of Aviation as

14  Plaintiffs' contacts with the Northern District are not related to the causes of action that they have

15  brought in the instant case, which concern Aviation's employees at LAX.  The people directly

16  affected by the outcome of this case are concentrated in the Central District.  This fact makes

17  Plaintiffs' choice of forum less important.  *See Joe Boxer Corp. v. R. Siskind & Co., Inc.*, No. C 98-

18  4899 SI, 1999 WL 429549, at *9 (N.D. Cal. June 28, 1999) (noting that, "where the transactions

19  giving rise to the action lack a significant connection to the plaintiff's chosen forum, then the

20  plaintiff's choice of forum is given considerably less weight, even if the plaintiff is a resident of the

21  forum"; also stating that, while "Boxer's headquarters in San Francisco provides a meaningful

22  connection to the forum, [t]his connection . . . must be viewed in the context of a dispute whose

23  center of gravity is in New York"); *see also Board of Trustees, Sheet Metal Workers Nat'l Fund v.*

24  *Baylor Heating & Air Cond'g, Inc.*, 702 F. Supp. 1253, 1256 (E.D. Va. 1988) (noting that "the

25  weight given to plaintiff's choice of venue varies with the significance of the contacts between the

26  venue chosen by plaintiff and the underlying cause of action" and that "the plaintiff's choice is

27  entitled to less weight where there is little to connect the chosen forum with the cause of action").

28

F.      Feasibility of Consolidation

As to this factor, typically, a court is considering whether it should transfer a case to another venue because that venue has a related case which is pending. *See, e.g.*, *GLT Technovations, LLC v. Fownes Bros. & Co.*, No. 12-cv-00466 RMW, 2012 U.S. Dist. LEXIS 56028, at *17 (N.D. Cal. Apr. 20, 2012) (considering defendant's argument "that transfer will allow for better coordination with the action currently pending in New York, which involves substantially the same subject matter and parties"). Here, the situation is different because there is no pending related case in the Central District. Rather, *this* Court has before it a related case, *i.e.*, the ERISA action.

The fact that the ERISA case is before this Court, however, does not weigh against a transfer. That is because this Court has the discretion to transfer not only the instant case but also the ERISA case. Although the Court previously denied a motion to transfer the ERISA case, that decision is not binding and is subject to reconsideration. Reconsideration is particularly warranted given that, at the time that the Court denied the motion to transfer the ERISA case, this case (*i.e.*, the RLA case) had not been filed. In other words, the Court's decision on the motion to transfer the ERISA case might well have been different if both cases had been before the Court.[2]

Accordingly, the Court has two questions to address: (1) whether the same court should consider both cases and (2) if so, should it be this Court or a court in the Central District of California? Because the issues here impact the plaintiffs in the ERISA case (*i.e.*, the trust fund and its trustees), the Court gave the plaintiffs an opportunity to address anew whether their case should or should not be transferred to the Central District. *See California Serv. Employees*, No. 12-1079 EMC (Docket No. 66) (response to order to show cause).

As to the first issue, the Court has taken into account the ERISA plaintiffs' arguments but remains of the view that the two cases are indeed related. In both cases, Aviation has raised as a defense the invalidity of the collective bargaining agreement. Admittedly, the viability of that defense in the ERISA case has been limited. As the Court noted in its order denying transfer in the ERISA case, where there is an ongoing dispute as to the validity of a collective bargaining

_____

[2] If the Court had simply the RLA case before it, then it would not hesitate in transferring the case to the Central District.

**United States District Court**
For the Northern District of California

1   agreement ("CBA"), an employer still has an obligation to, *e.g.*, make contributions until the issue

2   has been adjudicated.  *See California Serv. Employees*, No. C-12-1079 EMC (Docket No. 38) (Order

3   at 9, 11).  Because, in the ERISA case, the validity of the CBA has not been adjudicated, the defense

4   cannot *yet* kick in.  But that does not mean that the defense might not come to fruition at a later point

5   – once the validity of the CBA is adjudicated.[3]  The ERISA plaintiffs admit as much in their

6   response to the order to show cause.  *See id.* (Docket No. 66) (Resp. at 4) (acknowledging that a

7   determination on the issue of whether Aviation "properly terminated the CBA . . may have a

8   dispositive effect in this case by establishing the cut-off date for the contribution obligation as the

9   date of the decision in the employer's favor").

10          Thus, contrary to what the ERISA plaintiffs argue, there is the possibility of inconsistent

11  results if the RLA case were to be transferred to the Central District and the ERISA case to remain

12  with this Court, as both courts would be dealing with the issue of the CBA's validity.  To the extent

13  the ERISA plaintiffs rely on *Baylor*, 702 F. Supp. at 1253, to argue otherwise, that reliance is

14  unavailing.  There, the court found that there was no possibility of inconsistent results because the

15  plaintiffs *conceded* that the resolution of an issue in the related case would be binding in the case

16  under consideration.  *See id.* at 1261.  Here, the ERISA plaintiffs have not made any such

17  concession; rather, they have simply noted that a decision in the RLA case on the validity of the

18  CBA *could* have a dispositive effect in the ERISA case.

19          The Court thus turns to the issue of whether the RLA and ERISA cases should be decided by

20  this Court or by a District Court of the Central District.  As reflected by the discussion above, the

21  Court concludes that the relevant factors weigh in favor of a transfer of the RLA case.  Although the

22  Court gives some deference to the RLA plaintiffs' choice of forum, that deference is minimal.  The

23  bottom line is that the center of gravity (in terms of the location of witness, the evidence, and those

24  most directly affected) for this dispute lies in Los Angeles.

25

26

27  _____

28          [3]  Of course, if Aviation were to prevail on the defense, that would not relieve it of any
    obligation to make contributions prior to the issue being adjudicated.

**United States District Court**
For the Northern District of California

1   As to whether the ERISA case should be transferred with the RLA case, the Court concludes

2   that it should be because of the common issue regarding the validity of the CBA.  In reaching this

3   conclusion, the Court has taken into account that "a plaintiff's choice of forum is accorded great

4   deference in ERISA cases." *Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1302 (9th Cir. 1997),

5   *opinion amended on denial of reh'g*, 128 F.3d 1305 (9th Cir. 1997), *rev'd on other grounds*, 525

6   U.S. 432 (1999).  But that deference is only one of several factors.  *See id.*  Furthermore, the reasons

7   for extending deference in ERISA cases have less resonance in the case at bar.  For example, one of

8   the reasons for extending deference is "to protect the financial integrity of . . . pension funds by

9   allowing these funds to bring all collection suits in their home districts." *International Painters &*

10  *Allied Trades Indus. Pension Fund v. Tri-State Interiors, Inc.*, 357 F. Supp. 2d 54, 54 (D.D.C. 2004).

11  Here, the union has a home in the Central District.  Another reason for extending deference is to

12  ensure uniform interpretation of the employee benefit plan's terms.  *See Holland v. ACL Transp.*

13  *Servs., LLC*, 815 F. Supp. 2d 46, 60 (D.D.C. 2011) (indicating that deference is extended "in the

14  service of uniform interpretation and efficient administration").  In the ERISA case, "the dispute

15  does not turn on an interpretation of the trust agreement," and therefore transferring the ERISA case

16  to the Central District of California "would have no detrimental effect on the uniform interpretation

17  of the plan's terms." *Fanning v. Trotter Site Prep., LLC*, 668 F. Supp. 2d 60, 64 (D.D.C. 2009).

18  In deciding to transfer the ERISA case along with the RLA case, the Court has also taken

19  into account the prejudice claimed by the ERISA plaintiffs.  While the Court is not unsympathetic to

20  the situation of the trust fund participants, the Court does not find any undue prejudice as a result of

21  a transfer.  Here, while there will be some cost to the ERISA plaintiffs to litigate in the Central

22  District rather than the Northern District, that cost will be somewhat limited given the relatively

23  close proximity between the Districts (*i.e.*, this is not a transfer that will require the ERISA plaintiffs

24  to litigate across the country) and the fact that the Union has a headquarter in Los Angeles.

25  Furthermore, the ERISA plaintiffs have failed to establish that there will be significant delay in

26  proceeding with their case as a result of a transfer.  For example, although Aviation's motion for

27  partial summary judgment will need to be renoticed for hearing with the Central District, the motion

28  would likewise need to be renoticed if the case were to remain with this Court.

### III.   CONCLUSION

For the foregoing reasons, the Court hereby grants Aviation's motion and transfers both the instant case (No. C-12-4032 EMC) as well as the related ERISA case (No. C-12-1079 EMC) to the Central District of California.

The Clerk of the Court is instructed to transfer **both** cases (Nos. C-12-4032 EMC, C-12-1079 EMC) to the Central District of California and close the file in each case.

This order disposes of Docket No. 25 in the RLA case.


IT IS SO ORDERED.


Dated:  December 20, 2012

_____
EDWARD M. CHEN
United States District Judge

United States District Court
For the Northern District of California